UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PEOPLE OF THE STATE OF
CALIFORNIA, ex rel.
Kamala D. Harris, Attorney
General of the State of
California,

                              NO. CIV. S-13-0675 LKK/DAD

      Plaintiff,

  v.

                              O R D E R

DARREN PAUL ROSE, individually,
and doing business as BURNING
ARROW I and BURNING ARROW II,
and Does 1 through 20,

      Defendants.
_____/

    Plaintiff State of California initially sued defendant Darren Rose in Shasta County Superior Court, alleging that Rose violated state law by selling certain unregistered cigarette brands and by failing to properly collect & remit tobacco excise taxes. Rose removed the matter to this court, alleging federal question jurisdiction. California now moves to remand, and seeks an accompanying award of attorney's fees and costs if it prevails on this motion.

1

The motion came on for hearing on May 13, 2013. Having considered the matter, for the reasons set forth below, the court will grant California's motion and remand this matter.[1]

**I. BACKGROUND**

The following allegations are taken from the complaint and the notice of removal.

California alleges that Rose's sale of certain cigarettes (including the Skydancer, Sands, Seneca, Opal, Couture, King Mountain, Heron, and Native Pride brands) were unlawful because their manufacturers failed to comply with state financial responsibility laws and/or because the brands have not been certified as meeting state fire safety standards. California also alleges that Rose failed to collect and remit excise taxes on the sales of these cigarettes.

On February 14, 2013, California filed suit against Rose in Shasta County Superior Court, alleging violations of (1) California's Tobacco Directory Law, Cal. Rev. & Tax Code § 30165.1; (2) the California Cigarette Fire Safety and Firefighter Protection Act, Cal. Health & Safety Code §§ 14950-14960; and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The state seeks injunctive relief, monetary penalties, and attorney's fees and costs.

---

[1] Although the court believes that remand is appropriate, I note that defendant's motion is not without substance, given the implicit tension between Supreme Court codes noted below. Nonetheless, that tension is resolved, for this court, by the Ninth Circuit, also noted below.

2

Rose is a member of the Alturas Indian Rancheria of California, a federally recognized Indian tribe. Rose sold cigarettes at two smoke shops (Burning Arrow I in Siskiyou County, and Burning Arrow II in Shasta County) on tribal land. He alleges that these sales were pursuant to a Tribal Tobacco Ordinance enacted by the tribe.

On March 29, 2013, Rose erroneously removed this action to the U.S. District Court for the Northern District of California. (ECF No. 1.) On April 5, 2013, the Northern District transferred the case to this court. (ECF No. 5.) On April 10, 2013, California moved to remand.

**II. STANDARD RE: REMOVAL**

Except where Congress has otherwise provided, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the [appropriate] district court[.]" 28 U.S.C. § 1441(a).

The Supreme Court has explained that:

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of a federal question is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.

Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Generally, for a federal question to be presented, "a right or immunity created by the Constitution or laws of the United

3

States must be an element, and an essential one, of the plaintiff's cause of action." Gully v. First Nat'l. Bank, 299 U.S. 109, 112 (1936).

The Supreme Court has also recognized, however, that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g. & Mfg., 545 U.S. 308, 312 (2005). To identify such cases, district courts are to ask whether state law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.  The Ninth Circuit has interpreted Grable to mean that "a state-law claim will present a justiciable federal question only if it satisfies *both* the well-pleaded complaint rule *and* passes the 'implicate[s] significant federal issues' test" articulated by Grable. Cal. Shock Trauma Air Rescue v. State Compensation Ins. Fund, 636 F.3d 538, 542 (9th Cir. 2011) (emphasis in original). Thus, "a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) (internal quotation and citation omitted).

The party invoking the removal statute bears the burden of establishing federal jurisdiction. California v. Dynergy, Inc., 375

4

F.3d 831, 838 (2004). The removal statute is to be strictly construed against removal, and any doubt is resolved in favor of remand. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).

**III. ANALYSIS**

**A. Is federal jurisdiction proper?**

**1. The precedential import of California v. Huber**

At the outset, the court notes that a recent order in California v. Huber, No. C 11-1985, 2011 WL 2976824, 2011 U.S. Dist. LEXIS 80089 (N.D. Cal. Jul. 22, 2011) (Seeborg, J.) appears dispositive of this matter.[2] Huber concerns a member of an Indian tribe who sold cigarettes on tribal land. California sued her under state law, alleging the same state-law causes of action alleged herein. The Huber defendant removed to federal court; subsequently, on plaintiff's motion, the matter was remanded to state court. In Huber, as in this action, plaintiff was represented by the California State Attorney General's Office and defendant was

---

[2] The court is also mindful that its decision in California v. Native Wholesale Supply Co., 632 F. Supp. 2d 988 (E.D. Cal. 2008) (Karlton, J.) bears on the issues presented. In Native Wholesale, the State of California alleged that defendant, a corporation chartered by a Native American tribe in Oklahoma, with its principal place of business in New York, was distributing and selling cigarettes in California in violation of state law. This court held that, "[a]lthough resolution of this issue [of tribal immunity] will require application of federal law, defendant's argument is essentially an affirmative defense to the plaintiff's causes of action. As such, this does not give rise to federal question jurisdiction." Id. at 993. Rose, the defendant herein, seeks to distinguish Native Wholesale as involving the actions of a Native American corporation operating on another tribe's reservation, as opposed to a Native American acting on his own tribe's reservation, as here. As discussed in this order, this distinction does not change the court's conclusion that this matter must be remanded.

5

1  represented by the law firm of Fredericks Peebles & Morgan LLP.

2  One rarely finds a precedent that is more squarely on point
3  with a case than Huber is with the present matter. While Huber is
4  not binding on this court, it must be treated as persuasive
5  precedent. The only reason not to follow it and remand this action
6  would be if it were decided wrongly.

7  This is precisely what Rose urges: he argues that, in reaching
8  its decision, the Huber court misapplied Oklahoma Tax Comm'n v.
9  Graham, 489 U.S. 838 (1989). Graham concerns a suit by the State
10 of Oklahoma against an Indian tribe for, *inter alia,* failing to
11 collect and remit to the state certain taxes collected from
12 cigarette sales. The tribe removed the suit to federal court, which
13 in turn denied a motion to remand by Oklahoma. In a per curiam
14 opinion, the Supreme Court held that the district court should have
15 remanded, reasoning:

> [T]he existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense [under 28 U.S.C. § 1441(a)], arises under federal law. The possible existence of a tribal immunity defense, then, did not convert Oklahoma tax claims into federal questions, and there was no independent basis for original federal jurisdiction to support removal.

21 Id. at 841 (internal citation omitted).

22 Rose attempts to distinguish Graham and Huber on the grounds
23 that he is not asserting federal jurisdiction on the basis of
24 tribal immunity; instead, he claims, the complaint herein itself
25 gives rise to federal jurisdiction. The merits of his arguments are
26 considered below.

6

### 2. Does federal jurisdiction arise from the face of the complaint?

Rose argues that he is not claiming federal jurisdiction based on tribal immunity; rather, he asserts that jurisdiction arises from California raising a federal issue on the face of its complaint. Specifically, a pre-suit cease-and-desist letter to Rose, attached as an exhibit to the complaint, provides: "It is irrelevant to the application of these laws that the properties on which your two smoke shops are operating are tribal-member allotments held in trust by the United States." (ECF No. 1-2 at 14.) As "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), Rose contends that, by including the letter as an exhibit, California has raised the immunity issue in its complaint. (Opposition 8.)

This argument betrays a misunderstanding of the "well-pleaded" complaint rule. Just because the complaint *discusses* a federal doctrine does not mean that the complaint *presents* a federal question. The test remains whether "a right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." Gully, 299 U.S. at 112. See also 14B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3722 (4th ed. 2013) ("The mere reference to some aspect of federal law in the complaint does not automatically mean that an action is removable"); 13D Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3566 (3d

7

ed. 2013) ("It is not uncommon for a plaintiff to allege not only the claim but to anticipate and rebut a defense or to plead something else irrelevant to the claim itself. The well-pleaded complaint rule stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself and ignore any extraneous material"); Rogers v. Rucker, 835 F. Supp. 1410, 1412 (N.D. Ga. 1993) ("[T]he complaint will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense").

Here, California's reference to the situs of Rose's smoke shops on tribal land is evidently meant to disabuse him of the notion that tribal immunity will protect him from suit. It is a warning written in anticipation of a probable defense, not an assertion of the ability to prove an essential element of a claim.[3]

Rose has failed to demonstrate that federal jurisdiction arises from the face of plaintiff's complaint, even if the complaint is deemed to include the exhibits thereto.

### 3. Is a federal question inherently present in the state law causes of action?

Rose next argues that federal jurisdiction is warranted because a federal question is inherent in the complaint. He contends that, "Under established federal law, a state presumptively lacks the authority to regulate the property or

---

[3] Whether the Attorney General's position is well taken will have to be decided by the state courts.

1  conduct of Indian tribes or tribal-member Indians in Indian
2  country." (Opposition at 10, ECF No. 8.) According to Rose, states
3  may only regulate a tribal member on tribal land under an express
4  statutory grant from Congress. (Id. at 6.) Otherwise, "the only
5  sovereign other [*sic*] that may regulate a tribal members [*sic*]
6  acting within their reservations is the federal government." (Id.
7  at 10.) Accordingly, "California must rely on federal law . . . in
8  order [*sic*] enforce its statutes against an Indian acting in Indian
9  Country." (Id. at 11.)

10      California counters that states have additional grounds,
11 beyond an express Congressional grant of authority, to exercise
12 jurisdiction over tribal members on tribal land. (Reply at 4-5, ECF
13 No. 9.) California has the better of this argument. It is well-
14 settled that "Indian activities and property in Indian country are
15 ordinarily immune from state taxes and regulation." 1-6 Nell J.
16 Newton, et al. Cohen's Handbook of Federal Indian Law § 6.03
17 (2012). This principle dates back as far as Worcester v. Georgia,
18 31 U.S. 515, 557 (1832) ("[T]he several Indian nations [constitute]
19 distinct political communities, having territorial boundaries,
20 within which their authority is exclusive . . ."). Nevertheless,
21 the Supreme Court has recognized that there exists no "inflexible
22 *per se* rule precluding state jurisdiction over tribes and tribal
23 members in the absence of express congressional consent."
24 California v. Cabazon Band of Mission Indians, 480 U.S. 202, 214-5
25 (1987). As it stands, "in exceptional circumstances a State may
26 assert jurisdiction over the on-reservation activities of tribal

9

members." Id. at 215 (quoting New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 331-2 (1983)). With these principles in mind, I turn to a recent decision by by a unanimous Supreme Court, Grable, 545 U.S. at 308, for whether state law claims sufficiently implicate federal issues so as to warrant removal.

The first Grable prong asks whether the state law claims "necessarily raise a stated federal issue[.]" Here, they do not. The statutes under which California sues do not appear to require proof of the ability to regulate conduct on tribal land. Accordingly, California need not demonstrate that it has the right to proceed against Rose (whether under an enabling federal statute or due to some "exceptional circumstance" recognized by the courts) *unless Rose first raises tribal immunity as an affirmative defense.* If California asserts that unlawful cigarette sales took place within its territory, it is up to Rose to contest this fact. In the absence of such a defense, California could go about proving the elements of its state law claims without any reference to, say, Public Law 280.[4] In other words, California's right to recovery does not "require[] resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. v Constr. Laborers Vacation Trust, 463 U.S. 13 (1983).

---

[4] "In Pub.L. 280, Congress expressly granted six States, including California, jurisdiction over specified areas of Indian country within the States . . . . In § 2, California was granted broad criminal jurisdiction over offenses committed by or against Indians within all Indian country within the State. Section 4's grant of civil jurisdiction was more limited." Cabazon, 480 U.S. 202, 207 (1987).

10

1    To be clear, there is little doubt that the other two Grable
2 prongs could be satisfied. The limits of state authority to
3 regulate tribe members' activities on tribal land continues to be
4 a "disputed and substantial" issue. Grable, 545 U.S. at 314. And
5 as for concerns about "disturbing any congressionally approved
6 balance of federal and state judicial responsibilities," it has
7 been recognized that federal court may be the better forum for
8 resolving disputes between the states and Native American tribes.
9 See, e.g., United States v. Kagama, 118 U.S. 375, 384 (1886)
10 ("Because of the local ill feeling, the people of the States where
11 [the Indians] are found are often their deadliest enemies"); Idaho
12 v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 313 n.11 (Souter,
13 J., dissenting) ("[W]hen the plaintiff suing the state officers has
14 been an Indian tribe, the readiness of the state courts to
15 vindicate the federal right has been less than perfect").

16    Ultimately, Rose has failed to show that the complaint
17 necessarily raises tribal immunity, rather than merely creating a
18 (substantial) likelihood that immunity will be raised as an
19 affirmative defense.

**4. Is a federal question raised as to property rights in tribal land?**

22    Rose also argues that, at bottom, this dispute "may be
23 characterized as one concerning ownership and possession of Indian
24 land, and is therefore barred from state court jurisdiction."
25 (Opposition at 15, quoting Boisclair v. Superior Court, 51 Cal. 3d
26 1140, 1154 (1990) (holding, *inter alia*, that California courts

11

cannot adjudicate rights to alleged tribal land.))

Rose's argument makes little sense, as it is based on the assumption that "[i]f Exhibit A [*i.e.*, the state's pre-suit letter to Rose, discussed *supra*] is not included in the face of California's Complaint, the Complaint fails to acknowledge the trust status of the land and, by that omission, asserts that the land is non-trust land in California." (Opposition at 15.) First, under Fed. R. Civ. P. 10(c), it appears that the letter should be treated as part of the complaint, and Rose gives no reason for not doing so. Second, federal jurisdiction cannot be premised on speculation about an argument that the plaintiff might make in the course of litigation. If, at some point in this lawsuit, California seeks to obtain property rights in tribal land, then the propriety of federal jurisdiction can be considered at that time.

In sum, Rose has failed to establish federal jurisdiction over this action, and it should be remanded to state court.

**B. Is California entitled to an award of fees and costs?**

California moves for an award of fees and costs under Fed. R. Civ. P. 11(b), asserting that Rose's removal petition was presented to cause unnecessary delay, and was not warranted by existing law, particularly given the recent remand orders in Native Wholesale, 632 F. Supp. 2d at 988, and Huber, 2011 WL 2976824, 2011 U.S. Dist. LEXIS 80089.

I do not find Rule 11 sanctions to be warranted. Huber provides that the defendant therein "did not . . . attempt to explain how the [Supreme] Court's subsequent Grable framework might

12

somehow render Graham's analysis outdated or incorrect." Id. at *3 n.1. While the court went on to make a brief application of Grable to the facts of that case, the parties evidently did not brief the relevant issues as they did here. Their briefing enabled a more thorough consideration of the subject.

Further, the question of when remand is warranted in cases involving tribal sovereignty remains unsettled. The Second Circuit's recent opinions in New York v. Shinnecock Indian Nation, 686 F.3d 133 (2nd Cir. 2012) (remanding on the basis that the complaint, which alleged that construction of casino would violate state gaming & environmental laws and local zoning & wetlands protection ordinances, only alleged violations of state law); 701 F.3d 101 (2nd Cir. 2012) (denying rehearing *en banc*) each provoked powerful dissents. To wit:

> [F]ederal-question jurisdiction exists in this case not because of these anticipated defenses [of tribal immunity] but because the Plaintiffs, in order to establish that they have any authority over the Tribe's activities at issue, must prove in their case-in-chief that [the disputed property] is not Indian land. The majority ignores the antecedent nature of this inquiry and overlooks the fact that the Plaintiffs' authority to regulate the Tribe's activities on the [disputed] parcel necessarily turns on whether the Tribe holds aboriginal title to the land in question and ultimately whether [it] is Indian land — issues plainly arising under the laws of the United States.

701 F.3d at 106 (Hall, J., dissenting).

These arguments echo those of the defendant herein: that California's ability to regulate Rose's conduct on tribal land turn on the question of whether the state has the requisite authority to enforce its laws. While I found (as the majority of the

13

1  Shinnecock panel did) that this inquiry is in the nature of an
2  affirmative defense, rather than an element of plaintiff's lawsuit,
3  it is apparent that reasonable jurists continue to disagree as to
4  whether district courts have subject matter jurisdiction over state
5  law claims that implicate Native American sovereignty.
6      Sanctions are hardly warranted under such circumstances.

**IV. CONCLUSION**

The court orders as follows:

[1] Plaintiff's motion to remand is GRANTED. The clerk of the court is directed to close this case.

[2] Plaintiff's motion for attorney's fees and costs is DENIED.

IT IS SO ORDERED.

DATED:  May 14, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

14